# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**PETER ABBADESSA,**
    Petitioner,

v.                                                         Civil Action No. 3:14-cv-88

**RUSSELL A. PERDUE, Warden,**
**Federal Correctional Institution FCI-Gilmer;**
**U.S. ATTORNEY GENERAL,**
    Respondents.

## REPORT AND RECOMMENDATION

On August 8, 2014, the *pro se* petitioner, Peter Abbadessa ("Petitioner"), an inmate incarcerated at FCI Gilmer in Glenville, West Virginia, filed a Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241. (Docket No. 1.) That same day, the Clerk of the Court mailed a Notice of Deficient Pleading to Petitioner, enclosing an application to proceed *in forma pauperis* ("IFP") and a Prisoner Trust Account Report. The Notice advised Petitioner that failure to pay the $5.00 filing fee or to file the application to proceed IFP within twenty-one (21) days might result in dismissal of his case. (Docket No. 3.) Petitioner paid the $5.00 filing fee on August 12, 2014. (Docket No. 4.) This case is before the undersigned for an initial review and Report and Recommendation pursuant to Local Rule of Prisoner Litigation Procedure 2.

## I.  Facts

On July 25, 2009, while Petitioner was housed at FCI Schuylkill in Minersville, Pennsylvania, staff performed a search of the cell that Petitioner shared with another inmate. The search was conducted after a "drop note" was located. That note stated that a "shank" was hidden inside property belonging to an inmate known as "Fat Cat" in Cell #211. Petitioner and another inmate were assigned to Cell #211. During the search, officers located a shank inside of a mesh laundry bag. The shank had been concealed inside of a pair of socks that was amongst institutional-issued clothing contained in a

mesh bag found on the bottom bunk, which was assigned to Petitioner's cellmate. Petitioner was taken to the Special Housing Unit ("SHU"). (Docket No. 1-8.) At 8:47 p.m. that evening, Petitioner was advised of his rights and recorded that he understood those rights on an incident report. (Docket No. 1-11.) The official copy of the incident report was provided to Petitioner at 8:55 p.m. that night. (Docket No. 1-12 at 1.)

Lieutenant Judy Poling investigated the incident. She concluded that Petitioner "did not have knowledge of this weapon and in fact should have these charges dismissed and returned to general population." (Docket No. 1-11 at 2.) She further concluded that Petitioner's cellmate was "appropriately charged by the fact the homemade weapon was found on [his] bed and being concealed with clothing to use as a pillow on his bed." (Id. at 1.) The matter was then referred to the Unit Disciplinary Committee ("UDC").

The UDC received an oral statement from Petitioner denying that the shank was his. (Docket No. 1-12.) The incident report was sent to a Disciplinary Hearing Officer ("DHO"). On July 28, 2009, at 10:10 a.m., Petitioner was given a written Notice of Disciplinary Hearing before the DHO. (Docket No. 1-14.) At that time, Petitioner indicated that he did wish to have a staff member represent him at the hearing. (Id.) He also stated that he did not wish to call any witnesses, and he signed his acknowledgment of receipt of the notice and his rights. (Id.) At the same time, Petitioner signed his acknowledgment of receipt of a separate statement of "Inmate Rights at Discipline Hearing." (Docket No. 1-13.) That notice states, inter alia, an inmate's right to receive a written copy of the charge against him at least twenty-four (24) hours before appearing before the DHO, the right to be represented by a staff member, and to call witnesses. (Id.)

Petitioner had his hearing before the DHO on August 17, 2009, at FCI Schuylkill. At the beginning of the hearing, Petitioner was advised of his rights and waived his right to have a staff

representative present. (Docket No. 1-18 at 1.) Petitioner stated that the reason for his asserted belief that the shank belonged to his cellmate was because his cellmate feared retaliation due to a controversy with a third inmate. Petitioner also explained that his cellmate became very defensive when Petitioner offered to wash the contents of the mesh bag, which he said his cellmate was using as a pillow. (Id.) The DHO considered other items of evidence as well as Petitioner's testimony. (Id. at 2.)

The DHO wrote that he "believed" the information provided by staff members "as they derived no known benefit by providing false information." (Id. at 3.) He explained his finding of Petitioner's responsibility as follows:

> Inmates are responsible for the contents of their cell. The laundry bag had no specific labels nor the clothing found inside which would constitute specific ownership of the bag. The area in which the bag was found is considered to be a common area inside the cell where both inmates have equal access to it.

(Id.) The DHO determined that Petitioner had committed the prohibited act of possession of a weapon. (Id.) Petitioner received sixty (60 days of disciplinary segregation, fifty-four (54) days of disallowance of good conduct time, forfeiture of 118 days of non-vested good conduct time, eighteen (18) months' loss of phone and visit privileges, and one (1) year's loss of commissary privileges. (Id.) The DHO also noted a disciplinary transfer. (Id.)

## II  Petitioner's Contentions

In his petition, Petitioner alleges the following:

1. He did not receive a written copy of the charges against him within twenty-four (24) hours of the time staff became aware of the incident;

2. He did not have a staff representative present during his disciplinary hearing even though he had requested one at the UDC hearing;

3. He cannot be held responsible for any weapon or contraband concealed inside another inmate's personal property; and

4. He was not given the opportunity to have the weapon fingerprinted to

3

determine ownership.

(Docket No. 1 at 5-7.) Petitioner "seeks to restore the 171 days of good conduct time and have his record expunged of this disciplinary action." (Id. at 8.)

### III.    Analysis

Prior to the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, 28 U.S.C. § 2244 authorized dismissal of a successive habeas petition that presented "no new grounds not heretofore presented and determined." McClesky v. Zant, 499 U.S. 467, 483 (1991). Prior to its amendment through AEDPA, § 2244(a) was applied to bar successive habeas petitions regarding challenges to actions of the Commission. See, e.g., Glumb v. Honstead, 891 F.2d 872, 873 (11th Cir. 1990); Poyner v. U.S. Parole Comm'n, 878 F.2d 275, 277 (9th Cir. 1989); Sacco v. U.S. Parole Comm'n, 639 F.2d 441, 442-43 (8th Cir. 1981).

As amended by AEDPA, § 2244(a) now provides:

> No circuit or district judge shall be required to entertain an application for writ of habeas corpus to inquire into the detention of a person pursuant to a judgment of a court of the United States if it appears that the legality of such detention has been determined by a judge or court of the United States on a prior application for writ of habeas corpus, except as governed in section 2255.

A few circuit and district courts have held that § 2244(a) bars a subsequent § 2241 as a successive petition where the grounds raised in the subsequent petition were denied in a prior § 2241 action. See Valona v. United States, 138 F.3d 693, 695 (7th Cir. 1998); Chambers v. United States, 106 F.3d 472, 475 (2d Cir. 1997); Byrd v. Gillis, No. CIV.A. 97-4697, 1997 WL 698157, at *1 (E.D. Pa. Nov. 5, 1997). For a petition to be barred as successive under this provision, the same claims must have been raised and adjudicated on the merits in the petitioner's prior habeas proceedings. Kuhlmann v. Wilson, 477 U.S. 436, 444 n.6 (1986) (plurality opinion). Under the abuse-of-the-writ doctrine, a court may dismiss a subsequent petition when "a prisoner files a petition raising grounds that were available but

4

not relied upon in a prior petition, or engages in other conduct that disentitles him to the relief he seeks." Id. The Supreme Court has noted that the restrictions on successive petitions set forth in § 2244(a) "constitute a modified res judicata rule, a restraint on what is called in habeas corpus practice 'abuse of the writ.'" Felker v. Turpin, 518 U.S. 651, 664 (1996).

In 2011, while incarcerated at FCI Jesup in Jesup, Georgia, Petitioner filed a § 2241 petition in which he raised the following claims:

> 1) he did not receive a written copy of the charges against him within twenty-four hours of the time staff became aware of the incident; 2) he did not have a staff representative present during his disciplinary hearing; 3) he should not be held responsible for a weapon concealed in another inmate's personal property; and 4) he was not given the opportunity to have the weapon fingerprinted or to take a polygraph test concerning the weapon's ownership.

Abbadessa v. Haynes, No. CV211-084, 2011 WL 6004330, at *1 (S.D. Ga. July 15, 2011). These claims concerned the same disciplinary proceedings that occurred while Petitioner was incarcerated at FCI Schuylkill. Id. at *1-2. United States Magistrate Judge James Graham filed a Report and Recommendation ("R&R") in which he recommended that Petitioner's petition be denied. Id. at *4. Specifically, Magistrate Judge Graham found that Petitioner's claims were meritless because his due process rights had not bee violated. Id. at *3. The R&R was adopted by Chief United States District Judge Lisa Godbey Wood. Abbadessa v. Haynes, No. CV211-084, 2011 WL 6004295 (S.D. Ga. Nov. 30, 2011).

The claims that Petitioner raises in the instant petition are identical to those already denied by the Southern District of Georgia when considering Petitioner's prior § 2241 petition. Petitioner cannot benefit from another "bite at the apple" just because he was transferred to FCI Gilmer from FCI Jesup. Accordingly, the undersigned recommends that Petitioner's claims be denied and dismissed with prejudice as successive and as an abuse of the writ.

## **IV.** **Recommendation**

For the foregoing reasons, the undersigned **RECOMMENDS** that Petitioner's Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241 (Docket No. 1) be **DENIED** and **DISMISSED WITH PREJUDICE**.

Any party may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the Honorable Gina M. Groh, United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of the Court is directed to provide a copy of this Report and Recommendation to counsel of record and to mail a copy to the *pro se* Petitioner by certified mail, return receipt requested.

DATED: December 23rd , 2014

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE